*223 OPINION of the Court, by
Judge Trimble.—
Woods, who was complainant in the court below, claimed by his bill the moiety of a settlement and pre-emption, the legal title of which is vested in Mrs. Patrick, as heir at law to Richard Calloway, dec’d. upon the ground of an alleged custom of the country entitling Thomas Brooks and Caleb Calloway, under whom he *224 claimed by purchase, to one half of the land for the 1⅛» eating of the pre-emption warrant, and surveying and registering the settlement and pre-emption, and paying the expenses thereof. This claim was sustained by the Fayette circuit court; who decreed Patrick and wife to convey to Woods a moiety of the settlement and preemption. From that decree Patrick and wife appealed* and the court of appeals, at the July term, 1805, reversed the said decree, being of opinion that the alleged CUstom was not sufficiently proven ; and the court of appeals, in their said decree of July term, 1805, further directed the suit to be remanded to the said circuit COurt, “ that it may ascertain the expenses incurred by the said Thomas Brooks in locating the said pre-emption warrant, and by Caleb Calloway in surveying and registering the said settlement and pre-emption, together with such pecuniary compensation for their personal services in so doing as would be reasonable had they aC(;e(j as guardians of Elizabeth Patrick ; and enter up a decree therefor in favor of Archibald Woods, against John Patrick, for so much thereof as he cannot shew j,een already paid or allowed to the said Thomas and Caleb, or either of them, &c.
4191 dollars for fuch fervr-inoufly'ndout rageoudy ex-ceflive at firft
of jury and decree fur that fum new enquiry awarded.
After the cause had been remanded to the Fayette circuit court, it was removed, by change of venue, from thence to the Clarke circuit court, in which latter court a jury was impannelled and sworn, in pursuance of the decree of the court of appeals, to ascertain the expenses incurred by Brooks and Caleb Calloway, together with such pecuniary compensation for their personal services as would be reasonable had they acted as guardians of Elizabeth Patrick, as directed by said decree ; which said jury returned their verdict that Woods, as assignee of Brooks, and Caleb Calloway were entitled, for their expenses and services, to the sum of four thousand one hundred and ninety-one dollars ; for which sum that court entered up a decree, in favor of Woods, against John Patrick ; who hath sued out of this court this writ of error with supersedeas.
It will- only be necessary to consider the first, second and third errors assigned by the counsel of the plaintiff in error. They are as followeth : ,
1st. “ The inferior court erred in permitting evidence to go to the jury of the value of the land, as a measure, *225 for ascertaining the compensation directed to be enquir* ed into by the court of appeals.”
2d. “ The said court erred in not setting aside the verdict and directing a new enquiry to be made on the ground set forth in the second bill of exceptions.”
3d. “ The said finding ought to have been set aside, as exorbitant, and against the intent and meaning of the decree of the court of appeals.”
In the consideration of the first assignment, we will premise, that whether the decree of the court of appeals of July, 1805, be correct or incorrect in all or any of its parts, is not now open for enquiry ; that decree, in its nature, was final between the parties upon all subjects embraced by the decree ; and the proper subject of enquiry now is, whether the inferior court, in carrying that decree into effect, have proceeded according to the true meaning and intent thereof, or contrary thereto.
From the first bill of exceptions it appears that Woods produced and examined several witnesses, who proved that contracts for such services as were performed by Brooks and Caleb Calloway were seldom made to be paid for in money, but that such services were usually compensated inland ; the counsel for Woods “then offered to prove, by witnesses, what was the compensation usually given in land for such services, and that there was a general custom of the country relative to such compensation in land ;” to this latter evidence the defendant’s counsel objected, alleging it was in contravention of the decree of the court of appeals, and moved the court to exclude it from the jury : “ whereupon the court were of opinion that any evidence of such general custom giving part of the land located ought not to be given in evidence, but that the complainant was at liberty to give in evidence the value of the land claimed by the defendants, to shew the benefit the defendants had derived from the expenses and trouble of the said Brooks and Caleb Calloway respecting the land in the bill mentioned, that the same might have such weight with the jury as they might think proper; which opinion and instruction was given to the jury, and evidence produced of the value of said land.”
The question is, is this opinion of the inferior court in conformity with the true intent and meaning of the former decree of this court ? As to the expenses men *226 tioned in the former decree, incurred by Brooks in Iocs5-ting the pre-emption warrant, and by Caleb Calloway in surveying and registering the settlement and pre-emption, there can exist no doubt that they were intended by the decree of this court to be ascertained by reference to the usual office fees, together with the probable pecuniary expenses incurred by the necessary travelling to and from the public offices for the purposes of locating the pre-emption and registering the surveys, and also the probable expenses attendant on making the surveys. The difficulty arises as to the mode of ascertaining the pecuniary compensation for personal services, mentioned in the former decree, according to its true intent and meaning.
This court, in the former decree, seemingly anxious to avert misconstruction, and to prevent the very mischief which has happened, do not direct it to be ascertained generally what compensation Brooks and Caleb Calloway were entitled to for their personal services, but specially limit the enquiry to such pecuniary compensation as would be reasonable had they acted as the guardians of Elizabeth Patrick. This special qualification or limitation has been attacked in argument, as insensible, as having no operation upon the meaning of the decree ; and has been said to be unprecedented, because it is said that guardians have not heretofore been allowed any thing far personal services rendered their wards. It is true that guardians have not generally been allowed compensation for their personal services, but it is conceived cases may, and frequently do exist, where it would be proper; as where, for the purpose of securing the estate of the ward, it becomes necessary for the guardian to prosecute a lengthy journey, and expend weeks or months in so doing. We say necessary., because if the estate were not worth the journey, and more than the journey, the ward would be injured* not benefited by the journey, if required to make compensation ; and in that case the journey should not be undertaken; the estate had better be lost. It may therefore be necessary, in order to determine (where the guardian has had unusual trouble, or spent an unusual portion of time in securing the estate of the ward) whether the guardian shall have compensation at all or not, to ascertain the value of the thing saved by his e&* *227 ertions, so far as to see that the ward will be benefited thereby after making compensation. But we conceive this to be the only purpose for which it can ever be necessary or proper, to take into consideration the value of the thing saved. If it is ascertained that there is a clear gain made to the ward by the extraordinary personal services of his guardian, which without those personal services would probably have been lost or endangered, and which will not be swallowed up by the compensation, then compensation ought to be made with regard to the injury sustained, or time and trouble spent by the guardian 5 but without further regard to the advantage derived by the ward : whether the advantage gained by the ward be worth one thousand or ten thousand pounds cannot, it being ascertained that the guardian should have compensation, enhance or diminish the measure of compensation. The guardian must be supposed to have acted with a view to the profit of his ward, and not for his own emolument 5 and it is enough if he be saved from loss.
At the time the personal services were performed by-Brooks and Caleb Calloway, Mrs. Patrick, the heir of Richard Calloway, dec’d. was an infant; they having intermeddled with her estate, must be considered either as wrongdoers, or as having acted-as her guardians. If the former, they could not be entitled to compensation for personal services. But this court, as their acts tended t© her benefit, have, ip the former decree, considered them, in the light of guardians, and decreed Woods, their as-signee, compensation. From this view of the subject, it now seems to us that the qualification or limitation made in the former decree of this court, that the compensation should be such as “ would be reasonable had they acted as the guardians of Elizabeth Patrick,” evinces the true intent and meaning of that decree to be, that the enqui-ry into the pecuniary compensation which Brooks and Caleb Calloway (or Woods, their assignee) should be allowed for their personal services, should be made without regard to the value of the land, or the relative advantage derived to Mrs. Patrick, the heir, thereby. Having in the said former decree determined that compensation ought to be made, the value of the land was no longer important, and ought not to have been brougb.S before the jury, It could only tend to divert and mis- *228 ^eac^ attenl;'on °f jury from the proper subject of enquiry pointed out in the former decree of this court ; aud how well it succeeded in producing that effect is sufficiently evinced by the verdict.
Upon the second and third assignments it will be sufficient to observe, that upon an examination of the evidence which appears, from the second bill of exceptions, to have been given before the jury, although we cannot and ought not to say what precise sum was proper, yet we have no hesitation in saying that the verdict of the jury is such as all men must, upon the first blush, pronounce to be enormously and outrageously excessive; and such as can only be accounted for by the misdirection of the court, and the improper evidence admitted by them to be given to the jury, before noticed in this opinion ; and that upon that ground the verdict of the jury ought to have been set aside and a new enquiry-awarded.
Decree of the Clarke circuit court reversed, the verdict of the jury set aside, and the cause remanded to the said court, with directions to cause a new enquiry to be had by a jury to be impannelled for that purpose, pursuant to the true intent and meaning of the said former decree of this court and this decree ; on which new enquiry no evidence of the value of the land shall be given to the jury.